## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TERESA PEGUES,**                                     CIVIL ACTION
          **Plaintiff**

**VERSUS**                                             NO. 18-2407

**THE BOARD OF SUPERVISORS OF**                        SECTION "E" (1)
**LOUISIANA STATE UNIVERSITY AND**
**AGRICULTURAL AND MECHANICAL**
**COLLEGE, LSU SCHOOL OF DENTISTRY**
**AND FACULTY DENTAL PRACTICE,**
          **Defendant**

## ORDER AND REASONS

Before the Court is a motion to dismiss, filed by Defendant Board of Supervisors of Louisiana State University and Agriculture and Mechanical College, LSU School of Dentistry and Faculty Dental Practice ("LSU").[1] The motion is opposed.[2] For the reasons that follow, the motion is **GRANTED** as to Counts 1 and 2 of Plaintiff's Second Amended Complaint. The Court **REMANDS** the remaining state law claim to the Civil District Court for the Parish of Orleans.

## BACKGROUND

Plaintiff Teresa Pegues alleges she was a dental student at the LSU School of Dentistry diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") in October 2015.[3] She alleges she needed extra time on examinations because of her ADHD, but several LSU professors told her "extra time would not be 'necessary.'"[4] Plaintiff alleges that, in June 2016, she was told she failed a course and received two letters of dismissal

---

[1] R. Doc. 41.
[2] R. Doc. 43.
[3] R. Doc. 18 at 3, ¶ 8; 4, ¶ 11(E).
[4] *Id.* at 4–5, ¶ 11(F).

from LSU.[5] She alleges she met with Deans Henry Gremillion and Sandra Andrieu on July 5, 2016 to discuss accommodations for her ADHD.[6] She alleges she was dismissed from the LSU School of Dentistry on July 15, 2016.[7]

On June 30, 2017, Plaintiff filed a petition in Louisiana state court alleging Defendant LSU wrongfully discriminated against her and dismissed her from the LSU School of Dentistry.[8] The case was removed to this Court on March 6, 2018.[9] On March 13, 2018, Defendant moved to dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6).[10] On May 3, 2018, the Court ordered Plaintiff to file an amended complaint to clarify her claims and the factual allegations on which those claims are based.[11] Plaintiff filed an amended complaint on May 18, 2018.[12] She states three claims: (1) failure to accommodate her disability in violation of Title II of the Americans with Disabilities Act ("ADA"),[13] (2) disability-based discrimination in violation of the ADA, and (3) disability-based discrimination in violation of Louisiana law.[14] She requests damages, injunctive relief in the form of reinstatement in the LSU School of Dentistry, declaratory relief, and attorneys' fees and costs.[15] On June 8, 2018, Defendant filed a motion to dismiss the amended complaint.[16]

On August 27, 2018, the Court ordered Plaintiff to amend her complaint again to address the issue of whether her claims under Title II of the ADA are barred by sovereign

---

[5] *Id.* at 8, ¶ 11(U); 9, ¶ 11(Z).
[6] *Id.* at 9, ¶ 11(BB).
[7] *Id.* at ¶ 11(EE).
[8] R. Doc. 1-2.
[9] R. Doc. 1.
[10] R. Doc. 4.
[11] R. Doc. 17.
[12] R. Doc. 18.
[13] 42 U.S.C. § 12131 *et seq.*
[14] LA. REV. STAT. 46:2252 *et seq.*
[15] R. Doc. 18 at 17.
[16] R. Doc. 24.

immunity.[17] Plaintiff filed her Second Amended Complaint on September 17, 2018, incorporating by reference the claims in her Amended Complaint and stating her claims are not barred by sovereign immunity because LSU removed this case to this Court.[18] The Court denied as moot without prejudice LSU's motion to dismiss.[19]

On September 24, 2018, LSU filed the instant motion.[20] LSU argues Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and alternatively, that they should be dismissed because they are barred by sovereign immunity. Plaintiff opposes.[21]

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[22] Whether a claim is barred by sovereign immunity bears on this Court's jurisdiction.[23] To the extent LSU argues Plaintiff's Title II claims are barred by sovereign immunity, the Court construes the instant motion as a motion to dismiss challenging the Court's subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[24] Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[25] "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the

---

[17] R. Doc. 39.
[18] R. Doc. 40.
[19] R. Doc. 42.
[20] R. Doc. 41.
[21] R. Doc. 43.
[22] *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).
[23] *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 333 n.8 (5th Cir. 2002) ("[W]e may consider this [sovereign immunity] issue *sua sponte* because it bears on this court's subject-matter jurisdiction." (citing *Burge v. Parish of St. Tammany*, 187 F.3d 452, 465–66 (5th Cir.1999))).
[24] *See* FED. R. CIV. P. 12(b)(1).
[25] *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted).

undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts."[26]

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[27] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[28] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[29] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[30] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[31]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[32] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[33] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[34]

---

[26] *In re FEMA*, 668 F.3d at 287.
[27] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[29] *Id.*
[30] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[31] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[32] *Twombly*, 550 U.S. at 555.
[33] *Id.* (quoting FED. R. CIV. P. 8(a)(2)).
[34] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).

## LAW AND ANALYSIS

Generally, when "grounds for dismissal may exist under both Rule 12(b)(1) and Rule 12(b)(6), the Court should, if necessary, dismiss only under the former without reaching the question of failure to state a claim."[35] In this case, LSU states two bases for its argument that this Court lacks jurisdiction over Plaintiff's Title II claims: (1) Louisiana has not waived its sovereign immunity for Title II claims[36] and (2) Congress did not validly abrogate sovereign immunity for Plaintiff's claims[37] under the Supreme Court's decision in *United States v. Georgia*.[38] LSU argues that, under *Georgia*, the Court should first determine whether Plaintiff states a claims for Title II violations before considering sovereign immunity.

Because sovereign immunity bears on the Court's subject-matter jurisdiction, the Court must first address whether the State of Louisiana has waived its sovereign immunity for Plaintiff's claims.[39] The Court finds the State has waived its immunity to suit in federal court but has not waived immunity from liability. The Court then turns to whether Congress validly abrogated sovereign immunity under the three-part test laid out in *Georgia*. LSU is correct that, before the Court reaches the Constitutional issue of abrogation at the third step of the *Georgia* analysis, the first step requires the Court to determine "which aspects of the State's alleged conduct violated Title II"[40] in an analysis analogous to one under Rule 12(b)(6). Under *Georgia* step one, the Court finds Plaintiff has stated a claim under Title II as to both Counts of her Second Amended Complaint.

---

[35] *Valdery v. Louisiana Workforce Comm'n*, No. CIV.A. 15-01547, 2015 WL 5307390, at *1 (E.D. La. Sept. 10, 2015).

[36] R. Doc. 41-1 at 22–23.

[37] *Id.* at 23–24.

[38] 546 U.S. 151 (2006).

[39] In cases in which a state has waived its sovereign immunity, a court does not reach the constitutional issue of abrogation and turns to the merits of the case. *See Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287 (5th Cir. 2005)

[40] *Georgia*, 546 U.S. at 159.

Under the remaining steps, the Court finds Congress did not validly abrogate sovereign immunity as to LSU's alleged conduct.

The Court then turns to Plaintiff's state law claims and remands them to state court.

## I. The State of Louisiana has not waived its sovereign immunity from liability with respect to Plaintiff's Title II claims.

Plaintiff brings claims under Title II against Defendant LSU, an instrumentality of the State of Louisiana.[41] In its order of August 27, 2018, the Court ordered Plaintiff to address the issue of sovereign immunity.[42] In her Second Amended Complaint, Plaintiff states this case is not barred by sovereign immunity because it was removed from state court.[43]

"Sovereign immunity consists of two separate and different kinds of immunity, immunity from suit and immunity from liability."[44] A state may waive or "relinquish its immunity from suit while retaining its immunity from liability, or vice versa."[45] When a state removes a case to federal court, it "voluntarily invoke[s] the jurisdiction of the federal courts and waive[s] its immunity from *suit* in federal court."[46] Whether the state retains "a separate immunity from liability is an issue that must be decided according to that state's law."[47] In this case, Defendant LSU removed this case from state court.[48] As a result, LSU has waived its immunity from suit in this Court.

---

[41] *See Pastorek v. Trail*, 248 F.3d 1140 (5th Cir. 2001) (unpublished table decision) ("[T]he LSU Board is an 'arm of the state' that enjoys Eleventh Amendment immunity.").
[42] R. Doc. 39.
[43] R. Doc. 40 at 1.
[44] *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 254 (5th Cir. 2005).
[45] *Id.* at 255.
[46] *Id.* (citing *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002)).
[47] *Id.*
[48] R. Doc. 1.

The Court turns to whether the State of Louisiana has waived immunity from liability for Plaintiff's claims under Title II of the ADA. The Court considers whether the State of Louisiana would have had immunity from liability if the Title II claim had been brought in state court.[49] Under Louisiana law, two provisions of the Louisiana constitution govern whether the state has waived sovereign immunity. Article 12, § 10(A) of the Louisiana Constitution provides the state is not "immune from suit and liability in contract or for injury to person or property."[50] Article 1, § 26, states the people of Louisiana "have the sole and exclusive right of governing themselves as a free and sovereign state" and retain "every power, jurisdiction, and right" not delegated to Congress.[51] In light of these constitutional provisions, the Louisiana Supreme Court has held the State of Louisiana has not waived its sovereign immunity for claims under the Family Medical Leave Act.[52] The Louisiana Second Circuit Court of Appeal has held the State of Louisiana has not waived its sovereign immunity for claims under Title I of the ADA.[53]

In *Pace v. Bogalusa City Sch. Bd.*, a student challenged architectural barriers under the Rehabilitation Act ("RA"), the Individuals with Disabilities Education Act ("IDEA"), and Title II of the ADA.[54] The Fifth Circuit held Louisiana waived sovereign

---

[49] Jonathan R. Siegel, *Waivers of State Sovereign Immunity and the Ideology of the Eleventh Amendment*, 52 DUKE L.J. 1167, 1235 (2003) (cited approvingly in *Benzing*, 410 F.3d at 255 n.25) ("[R]emoval of a case by a state defendant should be understood to waive the defendant's special privilege from being sued in federal court, . . . [but not] the defendant's immunity from any claims from which it would have been immune *in state court*.") (emphasis added); *accord Trant v. Oklahoma*, 754 F.3d 1158, 1173 (10th Cir. 2014) ("A state does not gain an unfair advantage asserting in federal court an affirmative defense it would have had in state court."); *Stroud v. McIntosh,* 722 F.3d 1294, 1302 (11th Cir. 2013) ("[N]othing in *Lapides* suggests that a state waives any defense it would have enjoyed in state court—including immunity from liability for particular claims."), *cert. denied*, 134 S.Ct. 958 (2014).
[50] LA. CONST. art. 12, § 10(A).
[51] LA. CONST. art. 1, § 26.
[52] *Holliday v. Bd. of Sup'rs of LSU Agr. & Mech. Coll.*, 2014-0585 (La. 10/15/14), 149 So. 3d 227, 228.
[53] *Reed-Salsberry v. State Through the Dep't of Pub. Safety & Corr., Youth Servs., Office of Juvenile Justice*, 51,104 (La. App. 2 Cir. 2/15/17), 216 So. 3d 226, 230, *writ denied sub nom. Reed-Salsberry v. State through Dep't of Pub. Safety & Corr., Youth Servs.*, 2017-0494 (La. 5/26/17), 221 So. 3d 81.
[54] 403 F.3d at 276.

immunity under the RA and IDEA by accepting federal funding.[55] The Fifth Circuit did not rule on whether Louisiana waived sovereign immunity under Title II, but held it made no difference for challenges to architectural barriers.[56] In *Covington v. McNeese State University*, the Louisiana Third Circuit Court of Appeal relied on *Pace* and held, in a challenge to architectural barriers, that Louisiana waived its sovereign immunity under Title II.[57] Unlike in *Pace* and *Covington*, Pegues, does not challenge architectural barriers at LSU. This Court is confident the Louisiana Supreme Court would hold that,[58] under Louisiana law, the State of Louisiana has not waived its sovereign immunity for claims under Title II of the ADA not related to architectural barriers.

## II. Congress did not validly abrogate sovereign immunity for Plaintiff's Title II claims.

Because Louisiana has not waived its sovereign immunity with respect to Plaintiff's Title II claims, the Court turns to whether Congress validly abrogated sovereign immunity for the claims. Congress may abrogate state sovereign immunity if it "makes its intention to abrogate unmistakably clear in the language of the statute" and "acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment."[59] An abrogation of sovereign immunity under Section Five of the Fourteenth Amendment applies to suits in state court as well as federal court.[60]

---

[55] *Id.* at 287.

[56] *Id.* at 287–89.

[57] 2008-505 (La. App. 3 Cir. 11/5/08), 996 So. 2d 667, 673, *writ denied,* 2009-0069 (La. 3/6/09), 3 So. 3d 491.

[58] When the Louisiana Supreme Court has not addressed an issue, the Court must "make an *Erie* guess and determine . . . how that court would resolve the issue if presented with the same case." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir.2003)). When making this guess, the Court "employ[s] Louisiana's civilian methodology, whereby [it] first examine[s] primary sources of law: the constitution, codes, and statutes." *Id.*

[59] *Nev. Dep't. of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003).

[60] *See Alden v. Maine*, 527 U.S. 706, 756 (1999); *Holliday*, 149 So. 3d at 228.

The ADA clearly states Congress's intent to abrogate state sovereign immunity.[61] In *United States v. Georgia*, the Supreme Court established a three-part test to determine whether, in a particular case, Title II's abrogation of state sovereign immunity pursuant to Section 5 of the Fourteenth Amendment is valid.[62] To make this determination, a court must consider on a claim–by–claim basis:

> (1)  which aspects of the State's alleged conduct violated Title II;
> (2)  to what extent such misconduct also violated the Fourteenth Amendment; and
> (3)  insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.[63]

A.    Count 1 states a claim for a Title II violation

Plaintiff brings Count 1 of her Second Amended Complaint against LSU under Title II of the ADA, alleging LSU failed to accommodate her ADHD.[64] As the Fifth Circuit has explained:

> A claim for failure to accommodate under the ADA has the following elements:
> (1)  the plaintiff is a qualified individual with a disability;
> (2)  the disability and its consequential limitations were known by the covered institution; and
> (3)  the covered institution failed to make reasonable accommodations for such known limitations.[65]

1.    *Qualified Individual with a Disability*

With respect to the first element, Defendant argues Plaintiff has not sufficiently alleged she is a qualified individual with a disability.[66] The ADA defines "disability" as "a

---

[61] *See Tennessee v. Lane*, 541 U.S. 509, 518 (2004) (citing 14 U.S.C. § 12202).
[62] 546 U.S. 151, 159 (2006).
[63] *Id.*
[64] R. Doc. 18 at 10–13.
[65] *Choi v. Univ. of Texas Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 215 (5th Cir. 2015) (unpublished) (citing *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)).
[66] R. Doc. 41-1 at 16.

physical or mental impairment that substantially limits one or more major life activities of such individual."[67] The statute specifies that "major life activities include, but are not limited to, . . . learning, reading, concentrating, thinking, [and] communicating."[68]

In her Second Amended Complaint, Plaintiff incorporates by reference the following allegations in her Amended Complaint:

> [(1) Plaintiff] suffered from an adjustment disorder with mixed anxiety and depressed mood and Attention Deficit Hyperactivity Disorder ("ADHD"), which substantially limited her major life activities; and . . .
> [(2) Plaintiff's] health conditions substantially limited her major life activities relative to school-related tasks such as learning, reading, concentrating, thinking, and communicating. Due to her difficulty concentrating, her study time was less productive. She took longer to complete school-related tasks than she would if she had not been disabled, she frequently found it difficult to study for long periods of time, and had difficulty beginning and completing school-related tasks.[69]

The Court finds Plaintiff has sufficiently alleged she had a disability under the ADA.

Defendant argues that, because Plaintiff rejected a reasonable accommodation, she is not a qualified individual with a disability.[70] In support, Defendant cites cases under Title I of the ADA, which in turn quote the regulations implementing Title I for the proposition that if an individual with a disability "rejects a reasonable accommodation . . . necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered qualified."[71] First, the regulations implementing Title I of the ADA do not apply directly to Title II. Second, although Plaintiff does allege she initially declined accommodations in October 2015 because she believed

---

[67] 42 U.S.C. § 12101(1)(A).
[68] *Id.* at § 12101(2)(A).
[69] R. Doc. 18 at 10, ¶ 12; 11, ¶ 14.
[70] R. Doc. 41-1 at 16.
[71] 29 C.F.R. § 1630.9(d).

she did not need them,[72] she also alleges she subsequently requested accommodations in early 2016.[73]

Defendant also argues that, because Plaintiff alleges other causes for her poor academic performance, including a death in the family, an unfair examination, and misgrading, her limitations were not attributable to her ADHD. Defendant cites no cases in support of the proposition that a plaintiff is not considered to have a disability merely because she alleges extraneous causes may have exacerbated the limitations caused by her disability. Plaintiff has alleged sufficient facts to allege she was a qualified individual with a disability under the ADA.

### 2. Disability and Limitations Known by Institution

Defendant argues Plaintiff did not allege she alerted LSU to her disability and limitations. Defendant cites *Choi v. Univ. of Texas Health Sci. Ctr. at San Antonio*, in which the plaintiff was a dental student diagnosed with Attention Deficit Disorder ("ADD") who was dismissed from a dental school because of poor academic performance.[74] In *Choi*, the student informed the school of his ADD diagnosis for the first time during the dismissal process.[75] The Fifth Circuit affirmed the district court's dismissal of the student's ADA claims for failure to state a claim because the student "alleged insufficient facts to show that his disability and its consequential limitations were known by the Dental School."[76] The Fifth Circuit stated, "it is incumbent upon the ADA plaintiff to assert not only a disability, but also any limitation resulting therefrom."[77]

---

[72] R. Doc. 18 at 4, ¶ 11(E).
[73] *Id.* at ¶ 11(F).
[74] 633 F. App'x at 215.
[75] *Id.*
[76] *Id.* at 216.
[77] *Id.* (quoting *Taylor v. Principal Financial Group., Inc.*, 93 F.3d 155 (5th Cir.1996)).

In this case, Pegues alleges she notified the school of her ADHD upon learning of her diagnosis in October 2015, well before the beginning of her dismissal process.[78] Although Plaintiff alleges she initially declined testing accommodations, she also alleges that, in early 2016, she "discussed her potential need to be allowed extra time on examinations, due to her disability, with several of her professors, including Dr. Larry Bates ("Dr. Bates"), but was told that extra time would not be 'necessary.'"[79] Defendant characterizes this is a "generic and bare allegation" and argues the allegation is insufficient under Rule 12(b)(6) because Plaintiff does not "identify[] (1) who she had such alleged discussions with or (2) when she had such discussions."[80] Defendant also notes that Dr. Bates "is not alleged to have taught a course that [Plaintiff] failed."[81]

When ruling on a motion to dismiss, the Court accepts a true the facts alleged in the complaint and determines whether Plaintiff's claim to relief is plausible.[82] The Court accepts as true Plaintiff's allegation that she spoke to several professors about her need for extra time. Unlike the student in *Choi*, Plaintiff alleges she notified the school of her ADHD in October 2015, and she notified the school of the resulting limitations in early 2016, before her initial receipt of a dismissal letter in June 2016. Plaintiff need not specify the date of the alleged discussions or the people with whom she had them in order to make her claim plausible. The Court finds Plaintiff has sufficiently alleged that her ADHD and its resulting limitations were known by LSU.

---

[78] R. Doc. 18 at 4, ¶ (E).
[79] *Id.* at 4–5, ¶ 11(F).
[80] R. Doc. 41-1 at 17 n.56.
[81] *Id.*
[82] *See Iqbal*, 556 U.S. at 678.

### 3. Failure to Make Reasonable Accommodations

Defendant argues Plaintiff has not sufficiently alleged LSU failed to provide reasonable accommodations.[83] Plaintiff makes three distinct factual allegations relating to reasonable accommodations. First, Plaintiff alleges that, in November 2015, she declined LSU's offer of testing accommodations because she did not realize she needed accommodations.[84] Second, Plaintiff alleges that, in early 2016, she discussed her "potential need to be allowed extra time on examinations, due to her disability, with several of her professors, . . . but was told that extra time would not be 'necessary.'"[85] Third, Plaintiff alleges that, on July 5, 2016, after being told she failed a course and receiving two letters of dismissal, she met with Deans Gremillion and Dr. Andrieu "regarding accommodations for her disability."[86]

With respect to the first allegation, because Plaintiff declined accommodations in November 2015, LSU cannot be liable for not providing accommodations at that time.

With respect to the second allegation, the Court finds Plaintiff has sufficiently alleged LSU failed to provide her accommodations, despite her request. Defendant does not address this allegation in the instant motion.

Defendant focuses its argument on the third allegation, arguing LSU "cannot be liable for failing to accommodate a student who had already failed multiple classes and had been notified of her dismissal."[87] "[A] 'second chance' or a plea for grace is not an accommodation as contemplated by the ADA."[88] The Court agrees that, if Plaintiff alleged

---

[83] R. Doc. 41-1 at 18.
[84] R. Doc. 18 at 4, ¶ 11(E).
[85] *Id.* at 4–5, ¶ 11(F).
[86] *Id.* at 9, ¶ 11(BB).
[87] R. Doc. 41-1 at 18.
[88] *Burch v. Coca-Cola Co.*, 119 F.3d 305, 320 n.14 (5th Cir. 1997) (citing *Siefken v. Village of Arlington Hgts.*, 65 F.3d 664, 666 (7th Cir. 1995)).

that the first time she requested accommodations was after being notified of her dismissal, LSU could not be liable for failing to accommodate her. However, because Plaintiff alleges she requested an accommodation in early 2016, before she was notified she failed a class and would be dismissed, Plaintiff has alleged sufficient facts to state a plausible claim that LSU failed to accommodate her disability.

### B. Count 2 states a claim for a Title II violation

Plaintiff brings Count 2 against LSU for discrimination under Title II of the ADA.[89] In her Amended Complaint, she states Defendant "harassed the Plaintiff on the basis of her disability, retaliated against her, limited her educational opportunities, expelled her from the Dental School, and otherwise discriminated against her."[90] Defendant argues she fails to state a claim for disability-based harassment or retaliation.[91] In response to the second motion to dismiss, Plaintiff represented she "has not asserted claims for retaliation or harassment."[92] Instead, she states Count 2 is based only on "discriminatory expulsion from an academic institution in violation of Title II."[93] To the extent Plaintiff brought claims in her complaint for harassment and retaliation, those claims are dismissed.

Title II prohibits discrimination by public entities, including LSU.[94] Title II provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or

---

[89] R. Doc. 18 at 13, ¶ 21.
[90] *Id.*
[91] R. Doc. 41-1 at 19–20.
[92] R. Doc. 27 at 15.
[93] *Id.*
[94] Title II defines "public entity" as "any State or local government [or] any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A), (B).

activities of a public entity, or be subjected to discrimination by any such entity."[95] The Fifth Circuit has listed the elements of a Title II discrimination claim as follows:

> To succeed on a claim under Title II of the ADA, a plaintiff must prove: '(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.' To recover monetary damages, a plaintiff must prove that the discrimination was intentional. [96]

The Court has found Plaintiff has alleged she has a qualifying disability.

In her Amended Complaint, Plaintiff alleges, "Defendant's expulsion was due to her ADHD and depression."[97] In support, she cites several factual allegations. Plaintiff alleges her professor Dr. Luis Infante made her take an "on-the-spot oral quiz" that was not required of students without disabilities.[98] She also alleges Dr. Infante miscalculated her grade because of his "animosity toward her because of her disability."[99] Plaintiff alleges Dean Toby Cheramie "berated" her and accused her of "making excuses" after she requested an accommodation. The Court finds these allegations are sufficient to state a claim that LSU intentionally discriminated against Plaintiff because of her disability.[100]

C.    The alleged Title II violations do not violate the Fourteenth Amendment.

The alleged Title II violations in this case relate to LSU's alleged failure to accommodate Plaintiff's disability and its alleged discriminatory termination. The second prong of the *Georgia* test requires a court to determine the extent to which the state government entity's alleged violation of Title II of the ADA also violated the Fourteenth

---

[95] 42 U.S.C. § 12132.

[96] *Wells v. Thaler*, 460 F. App'x 303 (5th Cir. 2012) (quoting *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) and citing *Delano–Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir.2002)).

[97] R. Doc. 18 at 13, ¶ 23.

[98] *Id.*

[99] *Id.* at 14, ¶ 23.

[100] *See Carter v. Orleans Par. Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984) (affirming motion to dismiss Title II claims because of the plaintiff's failure to allege the defendant's treatment of his children was intentional or "manifested discriminatory animus").

Amendment.[101] Section Five of the Fourteenth Amendment provides that "Congress shall have power to enforce, by appropriate legislation, the provisions" of the Fourteenth Amendment, including the Equal Protection Clause and the Due Process Clause.[102] This permits Congress to create private remedies against the states for violations of the Fourteenth Amendment.[103] As a result, "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."[104]

Under the Equal Protection Clause, "[d]isabled persons are not a suspect class."[105] As a result, classifications on the basis of disability are subject to rational basis scrutiny, meaning they violate the Equal Protection Clause "if they lack a rational relationship to a legitimate governmental purpose."[106] Plaintiff does not allege LSU subjected her to a classification on the basis of disability that lacked a rational relationship to a legitimate governmental purpose. As a result, LSU's alleged conduct does not violate the Equal Protection Clause.

The Due Process Clause guarantees certain substantive fundamental rights, and a violation of Title II violates the Due Process Clause when it prevents people with disabilities from exercising those rights.[107] For example, when physical barriers prevent people with disabilities from exercising their fundamental right of access to the courts, an ADA violation also may violate the Due Process Clause.[108] However, "the Supreme Court has never before recognized access to public education or freedom from disability

---

[101] *Georgia*, 546 U.S. at 159.
[102] U.S. CONST. amend. XIV, § 5.
[103] *Georgia*, 546 U.S. at 158.
[104] *Id.* at 159.
[105] *Douglas v. Gusman*, 567 F. Supp. 2d 877, 886 (E.D. La. 2008) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).
[106] *Lane*, 541 U.S. at 522.
[107] *Id.* at 515.
[108] *See generally id.*

discrimination in education to be fundamental rights."[109] As a result, no alleged Title II violation in this case constitutes a deprivation of a substantive fundamental right under the Due Process Clause.[110]

The Due Process Clause also guarantees procedural protections against deprivations of life, liberty, or property.[111] Plaintiff argues she has a liberty interest and a property interest in her continuing education that is protected by the Due Process Clause.[112] The Supreme Court has held students have a protected interest in their ability to remain in school.[113] However, in *Board of Curators of Univ. of Missouri v. Horowitz*, the Court has held there is a "significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct. This difference calls for far less stringent procedural requirements in the case of an academic dismissal."[114] The plaintiff in that case was dismissed from medical school for academic reasons. The Court held a hearing was not necessary and explained:

> Academic evaluations of a student, in contrast to disciplinary determinations, bear little resemblance to the judicial and administrative fact-finding proceedings to which we have traditionally attached a full-hearing requirement. . . . The decision to dismiss respondent, by comparison, rested on the academic judgment of school officials that she did not have the necessary clinical ability to perform adequately as a medical doctor and was making insufficient progress toward that goal. Such a judgment is by its nature more subjective and evaluative than the typical factual questions presented in the average disciplinary decision. Like the

---

[109] *Pace*, 403 F.3d at 287.

[110] In her original state court petition, Plaintiff brought a cause of action for "violation of substantive and procedural due process," invoking the Louisiana Constitution's Due Process Clause. R. Doc. 1-2 at 10. She stated the basis for her cause of action was her liberty and property interests in her education. To the extent Plaintiff argues she brought a claim for violation of her substantive due process rights, she conflates *substantive* due process, which protects certain fundamental rights, with *procedural* due process, which prohibits the deprivation of protected liberty and property interests without adequate procedures.

[111] *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

[112] R. Doc. 43 at 6–13.

[113] *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 85 (1978) ("[D]ue process requires, in connection with the suspension of a student from public school for disciplinary reasons, 'that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.'") (quoting *Goss v. Lopez*, 419 U.S. 565, 581 (1975)).

[114] *Id.* at 86.

decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking.

Under such circumstances, we decline to ignore the historic judgment of educators and thereby formalize the academic dismissal process by requiring a hearing.[115]

In this case, Plaintiff argues her dismissal was partially disciplinary in nature and that she was not provided sufficient process in connection with her dismissal.[116] She argues the Court should infer that her dismissal not based on her failing a course, but rather "a result of some other aspect of her behavior or personality."[117] Nowhere in her petition does she allege any disciplinary violation that led to her dismissal. In contrast, she makes numerous factual allegations that the stated reason for her dismissal was academic.[118] The Court finds Plaintiff has not stated sufficient facts to allege her dismissal was disciplinary in nature. Because Plaintiff's dismissal was academic, based on the facts alleged in the Second Amended Complaint, no hearing was required. LSU's alleged Title II violation does not constitute a deprivation of Plaintiff's procedural due process rights. The Court finds no Fourteenth Amendment violation and proceeds to the third prong of the *Georgia* analysis.

---

[115] *Id.* at 89–90.

[116] *Id.* at 9–13.
In her original state court petition, Plaintiff alleged her dismissal was disciplinary, and LSU did not provide her with process sufficient to satisfy the requirements of the Louisiana Constitution. R. Doc. 1-2 at 10–11. LSU filed a peremptory exception of no cause of action, arguing the due process protections under the Louisiana and federal Constitutions are coextensive, and that, under both, no hearing is required for academic dismissals. R. Doc. 1-5 at 12–13. LSU argued Plaintiff's dismissal was academic in nature, and she was provided sufficient process for an academic dismissal. *Id.* at 13–14. The state court held an oral hearing on the motion, sustained LSU's exception without assigning written reasons, and granted Plaintiff leave to file an amended petition. R. Doc. 1-8 at 2.

[117] R. Doc. 43 at 10.

[118] R. Doc. 18 at 6–10, ¶¶ 11(O), (P), (R), (S), (T), (U), (V), (X), (Z), (CC), (DD), (FF).

## D.     The alleged Title II violations do not implicate the Fourteenth Amendment.

Courts reach the third prong of the *Georgia* test on summary judgment only in cases in which there is a genuine issue of material fact as to whether a defendant's conduct violated Title II of the ADA, but the alleged conduct did not violate the Fourteenth Amendment.[119] As a result, in this case, the Court must consider whether, as to the alleged conduct, Title II of the ADA was a valid exercise of Congressional authority under Section Five of the Fourteenth Amendment.[120] In *City of Boerne v. Flores*, the Supreme Court held that, in order for Congress to exercise its enforcement power under Section Five, "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end."[121] Even if Congress proscribes conduct that does not directly violate the Fourteenth Amendment, legislation is a valid exercise of Congressional power under Section Five if this "congruence and proportionality" test is satisfied.[122] If Title II is congruent and proportional to the constitutional right a claim implicates, the ADA validly abrogates sovereign immunity for the claim.[123] There must be a "narrow category of state action that focuse[s] the analysis on a specific individual right."[124]

In this case, Plaintiff does not explicitly state the Fourteenth Amendment right she argues is implicated by Defendants' conduct. There is no substantive due process right to "access to public education or freedom from disability discrimination in education."[125] As a result, Plaintiff's claims do not implicate substantive due process. The Court has found,

---

[119] *Georgia*, 546 U.S. at 159.
[120] *See id.*
[121] 521 U.S. 507, 520 (1997).
[122] *Id.*
[123] *Id.*; *see also Shaikh v. Texas A&M Univ. Coll. of Med.*, 739 F. App'x 215, 225 (5th Cir. 2018) (finding erroneous a district court's holding that "state sovereign immunity bars everything but constitutional claims").
[124] *Guttman v. Khalsa*, 669 F.3d 1101, 1120 (10th Cir. 2012).
[125] *Pace*, 403 F.3d at 287.

based on the allegations in the Second Amended Complaint, that Plaintiff has not alleged her dismissal was disciplinary. Plaintiff's claims do not implicate her procedural due process rights. The Court finds the alleged Title II violations do not implicate a right guaranteed by the Fourteenth Amendment, and Congress did not validly abrogate sovereign immunity for Plaintiff's claims under Title II of the ADA.

As a result, the Court dismisses Plaintiff's Title II claims for damages, declaratory relief, injunctive relief, and attorneys' fees and costs.

### III. The Court denies Plaintiff's request for leave to amend to name as a Defendant an LSU official.

Plaintiff's demand for injunctive relief, in the form of reinstatement into the LSU School of Dentistry,[126] has been dismissed for lack of federal jurisdiction. Although LSU is entitled to sovereign immunity, a claim for injunctive relief brought against an LSU official in his or her official capacity may be sustained under *Ex parte Young*.[127] Plaintiff requests leave to amend her complaint to name as a defendant "the appropriate LSU Dental School official(s) with authority to expel and reinstate students," and to withdraw her claim for damages.[128] Plaintiff has amended her petition three times, once pursuant to a state court order and twice pursuant to an order of this Court.[129] The Court will not grant Plaintiff leave to amend a fourth time.[130]

---

[126] R. Doc. 18 at 17.
[127] 209 U.S. 123 (1908).
[128] R. Doc. 43 at 13.
[129] R. Docs. 1-11, 18, 40.
[130] Plaintiff seeks the same injunctive relief under Louisiana law. R. Doc. 18 at 17. LA. REV. STAT. 46:2255 provides allows plaintiffs with disabilities to seek "any and all remedies available under the law . . . including but not limited to compensatory damages, attorney fees, costs, and any other relief deemed appropriate." Because Plaintiff may seek injunctive relief from LSU under Louisiana law, she is not unduly prejudiced by the Court's denial of her request for leave to amend her complaint.

## IV. The Court declines jurisdiction over Plaintiff's state law claims.

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[131] 28 U.S.C. § 1367 provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.[132]

The statute further provides, "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction."[133]

When LSU removed this case to this Court, it invoked the Court's federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserted claims under the ADA, a federal law.[134] The Court has found it does not have jurisdiction over Plaintiff's ADA claims and accordingly has dismissed them. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.[135] As a result, the Court remands this claim to the Civil District Court for the Parish of Orleans.

## CONCLUSION

**IT IS ORDERED** that the motion to dismiss, filed by Defendant Board of Supervisors of Louisiana State University and Agriculture and Mechanical College, LSU School of Dentistry and Faculty Dental Practice be and hereby is **GRANTED** as to Counts 1 and 2 of Plaintiff Teresa Pegues' Second Amended Complaint, which she brings under

---

[131] *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).
[132] 28 U.S.C. § 1367(a).
[133] 28 U.S.C. § 1367(c)(3).
[134] R. Doc. 1 at 3.
[135] Plaintiff brings claims for declaratory and injunctive relief and for compensatory damages under state law. R. Doc. 18 at 17.

Title II of the Americans with Disabilities Act.[136] Plaintiff's claims under Title II are **DISMISSED WITH PREJUDICE**.

      **IT IS FURTHER ORDERED** that Plaintiff's request for leave to amend her complaint is **DENIED**.

      **IT IS FURTHER ORDERED** that this case be and hereby is **REMANDED** to the Civil District Court for the Parish of Orleans.

      **New Orleans, Louisiana, this 9th day of April, 2019.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[136] R. Doc. 41.